UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/21/2018

-----------------------------------------------------------X
                                          :

UNITED STATES OF AMERICA,          :

                                          :

                          Plaintiff,   :        15 Cr. 174 (LGS)

                                          :

                    -against-      :        **OPINION AND ORDER**

                                          :

LUDWIG CRISS ZELAYA-ROMERO,    :

                                          :

                              Defendant.  X

-----------------------------------------------------------

LORNA G. SCHOFIELD, District Judge:

      Defendant Ludwig Criss Zelaya-Romero moves for orders directing the Government to investigate whether his interrogation in Honduras was recorded and to produce the documents underlying his extradition. He also moves for a ninety-day continuance of the deadline to file non-discovery pretrial motions. As discussed below, these motions are denied, except that Zelaya-Romero shall have fourteen additional days to refile a motion to suppress his statements to law enforcement.

## I.    BACKGROUND

      Zelaya-Romero was extradited to the United States from Honduras, and made his initial appearance on December 14, 2016. The Superseding Indictment alleges that Zelaya-Romero used his position as member of the Honduran National Police to facilitate safe passage through Honduras for multi-hundred-kilogram shipments of cocaine bound for the United States. Zelaya-Romero, along with two co-defendants, will stand trial on May 14, 2018.

      On August 23, 2017, the Court appointed new counsel at Zelaya-Romero's request. At the same time, the Court denied without prejudice a motion to suppress that had been filed by Zelaya-Romero's first attorney. The motion sought to suppress statements Zelaya-Romero made

to the DEA in the American embassy in Honduras.  The Court informed Zelaya-Romero that he could file a new motion to suppress or ask the Court to reinstate the initial motion.

To date, Zelaya-Romero has not resubmitted his motion to suppress nor filed any other non-discovery pretrial motions.  Over the course of the tenure of both of his lawyers, Zelaya-Romero has received six extensions of the deadline to file non-discovery motions:

1. From March 3, 2017, to March 16, 2017.

2. From March 16, 2017, to June 23, 2017.

3. From June 23, 2017, to August 15, 2017.

4. From August 15, 2017, to September 22, 2017.

5. From September 22, 2017, to October 23, 2017.

6. From October 23, 2017, to November 27, 2017.

The last three extensions were each between thirty and thirty-five days, granted at the request of his counsel.  After granting the last extension, the Court warned that "no further extensions will be granted absent extraordinary circumstances."  On November 27, 2017, Zelaya-Romero requested a seventh extension of ninety additional days, which the Government opposes. Zelaya-Romero also moved for orders directing the government to investigate whether tape recordings exist of his interrogation in Honduras and to produce the documents submitted to the Honduran government in order to procure his extradition.

## II.     LEGAL STANDARDS

### A.     Fed. R. Crim. P. 16

Rule 16(a)(1)(E) requires the Government in part "to permit the defendant to inspect and to copy . . . documents" that are (1) "within the government's possession, custody, or control" and (2) "material to preparing the defense."  Evidence qualifies as material if it "could be used to counter the government's case or to bolster a defense;" information not meeting either of those

criteria is not to be deemed material within the meaning of the Rule. *United States v Ulbricht*, 858 F.3d 71, 109 (2d Cir. 2017) (quoting *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). "The defendant must make a prima facie showing of materiality and must offer more than the conclusory allegation that the requested evidence is material." *United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013) (internal quotation marks and citations omitted); *see also United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (holding that the defendant must make a prima facie showing of materiality).

With respect to the requirement that the documents be within the Government's possession, custody or control, the prosecutor need not have "direct control" of the requested documents. *United States v. Giffen*, 379 F. Supp. 2d 337, 342-43 (S.D.N.Y. 2004). "Courts have typically required the prosecution to disclose under Rule 16 documents material to the defense that (1) it has actually reviewed, or (2) are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the prosecution team." *United States v. Connolly*, No. 16 Cr. 00370, 2017 WL 945934, at *4 (S.D.N.Y. Mar. 2, 2017); *accord United States v. Gil*, 297 F.3d 93, 106 (2d Cir. 2002) ("The government is reasonably expected to have possession of evidence in the hands of investigators, who are part of the 'prosecution team.'").

However, "[t]he prosecutor need not . . . produce documents from agencies that did not participate in the investigation of the defendant or documents of which it is unaware." *Giffen*, 379 F. Supp. 2d at 343 (citing *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir.1998)). Accordingly, "the prosecutor is not required to conduct a separate investigation for the purpose of responding to a defendant's discovery requests." *Id.* (citing *Avellino*, 136 F.3d at 255); *cf. United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("While the *Brady* rule requires the Government to turn over favorable information that it knows about, it does not require the Government to seek out such information like a private investigator and valet . . .

gathering evidence and delivering it to opposing counsel.") (internal quotation marks omitted).

### B. Fed. R. Crim. P. 12

Under Federal Rule of Criminal Procedure 12(c), a court may set deadlines for the parties to file pretrial motions. Under that rule, "[a]t any time before trial, the court may extend or reset the deadline for pretrial motions . . ." *Id.* A court need not consider an untimely motion, but "may consider the defense, objection, or request if the party shows good cause." *Id.* The advisory committee note explains that the Rule "anticipates that a district court has broad discretion to extend, reset, or decline to extend or reset, the deadline for pretrial motions," and is designed to "recognize[] this discretion explicitly." Fed. R. Crim. P. 12 advisory committee's note.

The Federal Rule is thereby consistent with the principle that "[a] district court has broad discretion to grant or deny a motion for a continuance." *United States v. Cusack*, 229 F.3d 344, 349 (2d Cir. 2000); *accord United States v. Al Fawwaz*, 116 F. Supp. 3d 194, 210 (S.D.N.Y. 2015) ("broad discretion must be granted trial courts on matters of continuances."). "A defendant must thus show both arbitrariness and prejudice in order to obtain reversal of the denial of a continuance." *United States v. Stringer*, 730 F.3d 120, 128 (2d Cir. 2013) (internal quotation marks omitted) (citing *United States v. Miller*, 626 F.3d 682, 690 (2d Cir. 2010)).

## III. DISCUSSION

As explained below, Zelaya-Romero's motions for additional discovery are denied. His motion for a continuance to file non-discovery pretrial motions is granted in part -- Zelaya-Romero shall have 14 days from the docketing of this opinion to file or reinstate his motion to suppress.

## A.    Rule 16 Discovery

As Zelaya-Romero cites only Rule 16 as the basis for additional discovery, this opinion considers only whether that rule compels the requested disclosures, and not whether *Brady* or *Giglio* compel such disclosures.  *Accord United States v. Vilar*, No. 05 Cr. 621, 2008 WL 2531195, at *2 (S.D.N.Y. June 22, 2008) ("Defendants do not argue, and there is absolutely no basis to conclude at this time, that the government is shirking its obligations under *Brady*.").  For the reasons that follow, Rule 16 does not compel the requested discovery.

### 1.    Interrogation Recording

Zelaya-Romero states that during his interrogation in Honduras, a smartphone was placed directly in front of him and the questioner appeared to have turned on its tape recorder.  He seeks an order compelling the Government to investigate whether his interrogation in Honduras was recorded.  That motion is denied.

Zelaya-Romero's opening brief does not articulate the basis for compelling the Government to investigate whether his Honduran interrogation was recorded and to produce the extradition documents.  His reply brief cites only Rule 16, which requires:

> Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
> > (i) any relevant written or recorded statement by the defendant if:
> >
> > • the statement is within the government's possession, custody, or control; and
> >
> > • the attorney for the government knows -- or through due diligence could know -- that the statement exists;

Fed R. Crim. P. 16(a)(1)(B)(i).  Where the Government makes good faith representations that it is complying with Rule 16, and that it will continue to do so, courts in this Circuit deny specific discovery requests.  *See, e.g.*, *United States v. Santana*, No. 13 Cr. 147, 2015 WL 5781413, at *2 (S.D.N.Y. Oct. 1, 2015) (denying a Rule 16 motion based on "the Government's affirmation that it has complied and will continue to comply with its Rule 16 obligations"); *United States v.*

*Basciano*, 763 F. Supp. 2d 303, 337 (E.D.N.Y. 2011) ("The Government's representations that it is aware of and will meet its discovery obligations, along with the fact that the Government has appeared to fully comply with its discovery obligations in good faith over the course of this case, are sufficient . . .").

Here, the Government assures the Court that it "is aware of its obligations under Rule 16, *Brady*, and *Giglio*, is currently in compliance with those obligations, and will remain in compliance with those obligations in the future." Zelaya-Romero has not pointed the Court to anything that suggests otherwise, and the Court has no reason to doubt the Government's representations. Those assurances are sufficient; the Government is "not required to conduct a separate investigation for the purpose of responding to a defendant's discovery requests." *Giffen*, 379 F. Supp. 2d at 343 (citations omitted).

Zelaya-Romero argues, "the existence of such a recording would be critical to the motion to suppress the statements which we must determine whether or not should be pursued." This argument is unpersuasive; a motion to suppress is unnecessary as to hypothetical evidence that the Government does not possess. *See United States v. Yousef*, 327 F.3d 56, 129 (2d Cir. 2003) ("The Government is not under an obligation to produce prior statements of foreign law enforcement officials that it does not possess."). If the Government becomes aware of a recording of Zelaya-Romero's interrogation in Honduras, then Rule 16 may require its disclosure, but the motion to require the Government to investigate whether such a recording exists is denied.

### 2. Extradition Materials

Zelaya-Romero's motion to compel the Government to disclose the documents underlying his extradition is denied, because those documents are not "material" under Rule 16. Evidence that the Government does not intend to use in its case-in-chief is still material if it "could be used to counter the government's case or to bolster a defense." *Ulbricht*, 858 F.3d at

109 (quoting *United States v. Stevens*, 985 F.2d at 1180). Here, the information contained in the extradition packet cannot be used to counter the Government's case or bolster a defense. Zelaya-Romero cannot rely on the treaty to challenge either his extradition or his indictment, because he lacks standing to do so. *See United States v. Barinas,* 865 F.3d 99, 105 (2d Cir. 2017). Furthermore, with respect to any potential challenges to Zelaya-Romero's extradition, principles of international comity bar this Court from second-guessing the decision of a foreign country -- Honduras -- to extradite. *See United States v. Garavito-Garcia*, 827 F.3d 242, 247 (2d Cir. 2016).

"Even when treaties are self-executing in the sense that they create federal law, the background presumption is that international agreements, even those directly benefiting private persons, generally do not create private rights. . . . An extraditee lacks standing to complain of noncompliance with an extradition treaty unless the treaty contains language indicating that the intent of the treaty drafters was that such benefits could be vindicated through private enforcement." *Barinas,* 865 F.3d at 105 (internal quotation marks, citations and alterations omitted); *accord Garavito-Garcia*, 827 F.3d at 246-47 ("absent protest or objection by the offended sovereign, a defendant has no standing to raise the violation of international law as an issue. These concerns apply equally when a criminal defendant objects based on the interpretation of an extradition treaty.") (quotations and alterations omitted).

In this case, the extradition treaty between the United States and Honduras is silent on the subject of private enforcement. *See* Convention Between the United States and Honduras for the Extradition of Fugitives from Justice, Hond.-U.S., Jan. 15, 1909, 37 Stat. 1616; Supplementary Extradition Convention Between the United States of America and the Republic of Honduras, Hond.-U.S., Feb. 21, 1927, 45 Stat. 2489. And Honduras has not objected to Zelaya-Romero's extradition or prosecution as beyond the scope of the treaty. As a result, Zelaya-Romero lacks standing to challenge his extradition or indictment based on alleged violations of the treaty, and

there is no reason for the Government to produce discovery on the subject. *Accord United States v. Tuzman*, No. 15 Cr. 536, 2017 WL 4785459, at \*19 (S.D.N.Y. Oct. 19, 2017) ("Because Colombia has not objected to Tuzman's prosecution on the S8 Indictment, and because the U.S.-Colombia extradition treaty and diplomatic note do not provide for a private right of action, Tuzman's specialty challenge [to his indictment] will be denied for lack of standing."); *United States v. Biba*, No. 09 Cr. 836, 2017 WL 913600, at \*3 (E.D.N.Y. Mar. 6, 2017) ("should the government become aware of any objection from Canada regarding the government's prosecution of Defendant, the government immediately must inform the Court in writing, as such an objection may present a basis for dismissing . . . the Superseding Indictment.").

Even if Zelaya-Romero had standing to challenge his extradition, principles of international comity would still bar review of Honduras's decision to extradite him. *Accord Garavito-Garcia*, 827 F.3d at 247 ("It is well established that, although courts of the United States have authority to determine whether an accused should be extradited from the United States, our courts cannot second-guess another country's grant of extradition to the United States.") (internal quotation marks, citations and alterations omitted). For this additional reason, there is no basis to force the Government to provide discovery vis-à-vis extradition. *Accord United States v. Loera*, No. 09 Cr. 466, 2017 WL 2821546, at \*6 (holding that a defendant was not entitled to discovery of an extradition package, because "international comity precludes federal courts from sitting in review of another country's grant of extradition . . .").

Zelaya-Romero argues that his request is nevertheless "material" within the meaning of Rule 16 for two reasons. First, he argues that the holdings in *Barinas* and *Gravito-Garcia* regarding an extraditee's lack of standing and comity are limited to challenges based on violations of the "rule of speciality" -- the "rule of specialty" states that an extradited defendant "can only be tried for one of the offences described in the treaty under which he is extradited, and for the offence with which he is charged in the proceedings for his extradition." *Barinas*,

865 F.3d at 104 (alterations omitted). Defendant's challenges are not limited to the rule of specialty; he raises two alternative grounds for challenging his extradition and indictment: the rule of "dual criminality" -- which provides that "the offense for which the fugitive is being extradited must be punishable under both [the foreign nation's] and United States criminal law" -- and a provision of the Honduran constitution prohibiting extradition of citizens. *Lo Duca v. United States*, 93 F.3d 1100, 1111 (2d Cir. 1996); *accord In re Pena-Bencosme*, 341 F. App'x 681, 684 (2d Cir. 2009) (summary order)

This argument lacks merit. The Second Circuit's holdings make clear -- in broad terms -- that "absent protest or objection by the offended sovereign, a defendant has no standing to raise the violation of international law as an issue." *Garavito-Garcia*, 827 F.3d at 246; *see also Barinas*, 865 F.3d at 105 ("An extraditee lacks standing to complain of noncompliance with an extradition treaty unless the treaty contains language indicating that the intent of the treaty drafters was that such benefits could be vindicated through private enforcement.") (quotations and alterations omitted). Although both *Barinas* and *Gravito-Garcia* involved challenges predicated on the "rule of speciality," the language of those decisions does not suggest that an extriditee's lack of standing applies only to "rule of speciality" challenges. Rather, those opinions suggest that, unless the extraditing nation objects, an extriditee lacks standing to challenge his extradition or indictment based on an extradition treaty -- including challenges based on the rule of "dual criminality."

Furthermore, under principles of international comity, U.S. courts cannot even "second-guess another country's grant of extradition to the United States" based on its interpretation of a bilateral extradition treaty -- let alone second-guess another country's interpretation of its own constitution. *Garavito-Garcia*, 827 F.3d at 247. In this case, Zelaya-Romero challenged his extradition in Honduras, and the Honduran Supreme Court rejected his constitutional claim.

This Court will not review the Honduran Supreme Court's interpretation of its own constitution; accordingly, there is no reason to require the Government to produce discovery on the issue.

Second, Zelaya-Romero argues that, although *Barinas* and *Gravito-Garcia* might doom any motion challenging his extradition or indictment, asking for the underlying discovery is "in no way a frivolous request" because he "has the right to preserve his extradition challenge in this Court in the event that the issue is decided in his favor by the Supreme Court in the future." Zelaya-Romero suggests that a Supreme Court disposition is likely, because "there is a split in the circuits on the issue of whether an extraditee has standing to challenge an extradition which violated the rule of speciality."

Zelaya-Romero in effect asks the Court to disregard Second Circuit law in the assessment of materiality because the law may change. While there may be a circuit split, "this Court is required to follow Second Circuit precedent unless and until it is overruled in a precedential opinion by the Second Circuit itself or unless a subsequent decision of the Supreme Court so undermines it that it will almost inevitably be overruled by the Second Circuit." *Boone v. United States*, No. 02 Cr. 1185, 2017 WL 398386, at *1 (S.D.N.Y. Jan. 30, 2017) (internal quotation marks omitted); *see also Monsanto v. United States*, 348 F.3d 345, 351 (2d Cir. 2003) (noting that district courts and the Second Circuit are "required to follow" a Second Circuit decision, even if it is in "tension" with subsequent Supreme Court precedent, "unless and until that case is reconsidered by [the Second Circuit] sitting *en banc* (or its equivalent) or is rejected by a later Supreme Court decision"); *United States v. Wong*, 40 F.3d 1347, 1373 (2d Cir. 1994) ("[U]ntil the Supreme Court rules otherwise, the district court would be obliged to follow our precedent, even if that precedent might be overturned in the near future.").

Here, Second Circuit law precludes Zelaya-Romero from challenging his extradition or indictment. There is no Supreme Court opinion that "so undermines" *Barinas* and *Garavito-Garcia* that the Second Circuit "will almost inevitably" overrule them. Consequently, applying

Second Circuit law, the documents underlying Defendant's extradition are not "material" for the purposes of Rule 16, and his request to compel production of such documents is denied. *Accord Loera*, 2017 WL 2821546, at *5 (denying a motion to compel disclosure of an extradition package under Rule 16 as "unnecessary and immaterial," because "international comity precludes federal courts from sitting in review of another country's grant of extradition . . .").

### B.     Rule 12 Continuance

Zelaya-Romero's motion for a seventh continuance of the deadline to file pretrial motions is granted in part and denied in part. Zelaya-Romero has requested ninety additional days to file non-discovery motions. Zelaya-Romero's briefs state that he might file pretrial motions, "including" (1) "a motion to dismiss the indictment on the ground that this prosecution violates the extradition treaty between Honduras and the United States" and (2) "renewal of his suppression motion."

No extension is warranted with respect to potential extradition challenges for the reasons discussed above. Likewise, there will be no extension for other pretrial motions that Zelaya-Romero could have filed, and may be considering but failed to describe to the Court. *Accord United States v. Gomez*, 199 F. Supp. 3d 728, 752 (S.D.N.Y. 2016) (denying a request for additional time to file pretrial motions where the defendant did not identify what potentially viable motions they were considering); *United States v. Valdez*, No. 16 Cr. 266, 2017 WL 819491, at *17 n.11 (S.D.N.Y. Feb. 28, 2017) (same).

Zelaya-Romero may renew his motion to suppress his statements to law enforcement or may ask the court to reinstate the motion to suppress filed by his previous counsel, provided such motion is filed or reinstatement is requested within fourteen days of the filing date of this Opinion. Two weeks is more than adequate, especially as Defendant's previous counsel already briefed the issue. No further extensions will be granted hereafter.

A ninety-day extension is not warranted. Zelaya-Romero has already received six extensions of the deadline to file non-discovery motions. Since retaining current defense counsel in August 2017, this is Zelaya-Romero's third request that the Court extend the time for pretrial motions: he requested thirty-one days, then another thirty-five days and now an extra ninety days. All three of those requests were filed on the day of the respective deadlines for filing pretrial motions. After the Court granted the most recent extension, it warned that "[n]o further extensions will be granted absent extraordinary circumstances."

Zelaya-Romero's briefs cite four reasons why a further ninety-day extension is nevertheless appropriate: (1) the voluminous nature of the discovery; (2) the need to translate documents from Spanish; (3) the complexity of the case, which will require independent research and investigation in Honduras and (4) the short length of time Zelaya-Romero's new counsel have had to prepare relative to his co-defendants' counsel and the Government.

Contrary to Zelaya-Romero's argument, a ninety-day extension is neither reasonable nor demanded by due process. The volume of discovery, complexity of the case and need for translation were proffered to justify the Court's decisions to extend the pretrial motions' deadline six times; those arguments have lost their persuasiveness. Likewise, the two most recent extensions were premised in part on the relative newness of counsel. That argument, too, is becoming stale, and cannot be used as a continuing basis to delay the proceedings.

"[T]he Court need be mindful that the Sixth Amendment's guarantee of the right to a speedy and public trial implicates a right belonging to the public." *United States v. Franco*, No. 13 Cr. 15, 2013 WL 2246917, at *1 (S.D.N.Y. May 17, 2013) (internal quotation marks omitted) (citing *United States v. Mase,* 556 F.2d 671, 676 (2d Cir. 1977)). A trial date is set for Zelaya-Romero -- as well as two of his co-defendants -- on May 14, 2018. Defendant Avila-Meza was arrested on July 11, 2016, Defendant Valladares-Zuniga was arrested on April 5, 2017, and Defendant Zelaya-Romero was arrested on December 13, 2016. If the Court were to grant an

extension of ninety days to file pretrial motions, then the briefing schedules for any motions Zelaya-Romero chose to file would encroach upon the trial date. Consequentially, a brief extension is granted for the filing or reinstatement of the motion to suppress; there will be no further extensions.

## IV. CONCLUSION

For the foregoing reasons, Zelaya-Romero's motions are GRANTED in part and DENIED in part. The Clerk of Court is respectfully directed to close the motions at Docket Numbers 281 and 289.

Dated:      February 21, 2018
           New York, NY

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE