15cr174

1

MDC Brooklyn, NY
January 31, 2021

Honorable District Judge
Lorna G. Schofield
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY, 10007

Application **DENIED** without prejudice to renewal following the conclusion of Defendant's appeal of his sentence. (*See* Dkt. No. 523.)

The Clerk of Court is respectfully directed to close the motion at Docket No. 539 and to mail a copy of this Order to Plaintiff.

Dated: November 10, 2021
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

Re: United States v. Zelaya Romero
Criminal Case N° S1. 1 Cr. 174 (LGS)

Motion for Downward Departure for Harsh Confinament

Honorable Judge Schofield

Respectfully I'm file'ing the Pro Se Motion for Downward Departure from the United States Sentencing Guidelines, (U.S.S.G.). The underlying reason for the Departure is the horrendous substandard conditions of Pre-trial confinement resulting in cruel, inhumane and unconstitutional treatment of Federal detainees housed in Metropolitan Detention Center (M.C.C) New York and Metropolitan Detention Center (M.D.C) Brooklyn.

The defendant believes that a Downward Departure is authorized under U.S.S.G, 5K0 and Section "H", U.S.C § 3553(a), First Steep Act and other laws applicable of this matter for circumstances of a kind not adequately taken into consideration and deriving from the authority granted to the District Court by the United States Supreme Court in Koon v. United States, 116 S. Ct. 2035 (1996).

See also United States v. Briton, 96-50172 (C.D. Cal), vacated on the grounds 139 F. 3d 718; See United States v. Sutton 972 F. Supp. 488 (D.N.J 1997).

In the Briton Case, The Court cited approximately 30 separate and distinct conditions under wich the defendant was in Pre-trial confinement, and granted a 30 months departure. In granting The Courts holds that; "(U) Unusual Pre-trial confinement in either length or severity of condition, can properly be considered punishment".

In the opinion of Chief Judge Weinstein, (E.D.N.Y.) in the United States v. Gallo, supra, he stated that "The inconceivable consequences of Pre-trail incarceration, particularly when prolonged beyond a short period are deniably severed, this constitutes a pattern of harm that we traditionally consider punitive, rather than regulatory, the moral demeanor of the detainee are bound deteriorate substantially" Id at 336.

Downward Departure for Substandard Condition of Pre-total Detention is Authorized by United States v. Briton, 96-50172 (C.D. Cal), vacated on other grounds 139 F. 3d 718; See United States v. Sutton, 972 F. Supp. 488 (D.N.J 1997).
The Court of Appeals for the 9th Circuit vacated on other grounds, and decline to review this issue because the government waived it's challenge by failing to object at the time of sentencing, however, suggested that The Court consider the propriety of such a departure at sentencing.
The Court's conclusion follows from the Supreme Court's holding that the "Hardship" of successive state and federal prosecutions can serve as a basis for a downward departure.

Here, too, the hardship of Pre-trial detention, if sufficiently atypical, "Could serve as basis for downward departure". In fact, The Courts in the Third Circuit have repeatedly granted departures based on this ground, See U.S. v. Navarro, No. 93-588-1 (D.N.J) (Lifland, J.); See U.S. v. Insuasti No. 96-73-3 (D.N.J)(Debevoise, J).

Courts in this Circuit reconize this to be a viable ground for Downward Departure From the U.S.S.G.
The Sentencing Court in U.S. v. Elvin Francis, NYLJ, February 2, 2001, Page 25, Colum 1, as well as in this district, U.S.v. Avila-Brianza, 00-M-704 (E.D.N.Y. Dec. 27, 2000), District Judge Spatt Downward Departed from the applicable guidelines range. In doing so, Judge Spatt acknowledged that the condition at the Nassau County Correctional Center (N.C.C.C.), warranted consideration. See U.S. v. Carlos Padilla 00Cr. 120-02. (E.D.N.Y. Feb 22, 2001)(Wexler, J)(Court applied a two for one ratio in sentencing for time spent in Nassau County Correctional Center), based on the foregoing it is the N.C.C.C warrant consideration, and that such a departure is authorized.
Among those "Extraordinary Conditions" the Briton Court cited the Following.
1- Unsanitary environment
2- Inadequate Food portions
3- Overcrowding
4- Excessive confinement in cell
5- Inadequate Law Library and access
6- Fresh air not circulate
7- Limited recreation and Facilities
8- Limited commissary

9. Poor Medical attention
10. Violent atmosphere
11. Limited privacy in shower/toilets
12. Non functional plumbing.

Under U.S.C. § 3553(a), The District Court can consider harsh conditions of the defendant's Pre-trial confinement. Which may be meritorious for a Downward Departure. Numerous District Courts have agreed that the Metropolitan Correctional Center (M.C.C.) New York is a facility which is harsh, inhumane, cruel and thus warrants consideration for a departure.

The Second Circuit also has upheld the District Court's decision in departing downwardly on the grounds of harsh confinement at M.C.C. in a Pre-trial and Pre-sentencing setting See United States v. Mendola, S2 03 Cr. 449 (KMW), The Honorable Judge Kimba Wood took into consideration Mendola's harsh confinement at M.C.C. and departed 10 months from his Final sentence. See also United States v. Mateo, 229 F. Supp 2nd 201, 212 (S.D.N.Y. 2004), See also United States v. Hernandez-Santiago, 92 F.3d 97, 101 n.2 (2d Cir. 1996), to which the court departed three levels based on 22 months of harsh confinement in the United States facility. See also United States v. Lara, 905 F. 2d 599 (2d Cir. 1990), in which the Court departed from a guideline of 121-151 months to 60 months taking into consideration in part, the defendant's harsh confinement during Pre-trial and Pre-sentence.

The harshness of Ludwig Zelaya Romero confinement bears on sentencing in so far one of the purposes of sentencing is to afford just punishment for the offence and respect for the Law 18 U.S.C. § 3553 (a)(1)(2)(3)(5) and (6).

Since his arrest on 07/13/16 in Honduras until his extradition Mr. Zelaya Romero has been 5 months in Honduras facility plus a period of 17 months in Metropolitan Correctional Center (M.C.C.) New York, since 12/13/16 to 05/14/18.

Mr. Zelaya Romero has been continually confined in a Federal Pre-trial Facility at Metropolitan Detention Center (M.D.C.), Brooklyn until to day. The facility at Metropolitan Correctional Center is not designed for long term stays. See United States v. Behr, 2006 WL 1586563 *5 (SDNY 2006)(Sweet, J.), Further noting that harsh conditions at M.C.C. were recognized by Judge Kimba Wood as a basis for substantial sentence reduction. Inmates movements are severely restricted at all time. They have little opportunity to participate in social programs, very limited access to personal development programs, excercise, physical training or recreation, and almost no chance to be outdoors.

Mr. Zelaya-Romero has endured harsh living condition at Metropolitan Detention Center (M.D.C.) Brooklyn; He was incarcerated at M.D.C. during the week-long power outage in January 27, 2019 to February 03, 2019 that resulted from an electrical fire in the west building. A Civil Rights Claim filed on behalf of M.D.C. inmates against the M.D.C.'s warden alleging, among other things, that M.D.C. inmates were subject to cruel and inhumane conditions during the power outage is pending in the Eastern District of New York, See Scott et al. v. Quay, 19 Civ. 1075 (JB)(MJG)(E.D.N.Y.). Mr. Zelaya Romero recalls that for aproximately eight days he and other inmates lived under lockdown in the dark, there was no electricity or hot water, no clean water to drink, Unsanitary environment, Fresh air not circulated, showering was limited and laundry service was close, for the first five days inmates went without

extra blankets or additional clothing despite the freezing-cold temperatures, regular meals were delayed by hours and on one particular day he only received one meal.
In my personal experience during the blackout I suffered from Severe Pain in my lower back (L4-L5 and L5-S1).
Extreme Pain for my Inguinal Hernia
Anxiety
Severe Depression
Post-Traumatic Stress Disorder (P.T.S.D)
Congestion
Sore throat
Coughing / Sneezing
Muscle pain
Headaches
Stomach pain
Hunger and Thirst
Sleep Apnea Symptoms

This District Court has recognized at sentencing the seriousness of the Harsh Living Condition at M.D.C. during the power outage. In United States v. Ozols, 16 Cr. 692 (JMF), The Honorable Judge Jesse M. Furman described the M.D.C. conditions in the wake of power outage as "Conditions that one associate with a third world country" which no detainees, convicted or not convicted, should have to endure, and issued "Credit" to the defendant as a result. See Sentencing Transcript in United States v. Ozols, 16 Cr. 692 (JMF), ECF No. 234 at 30:20-31:14
At the sentencing of defendant Ivars Ozols, Judge Furman stated the following:
Finally, I do belive and give Mr. Ozols credit for what he endured at

the M.D.C in las few weeks [...] the botton line is, the conditions that I read about are the conditions that one associates with a third world country and not a country like this, and nobody in detention, whether convicted, not convicted, awaiting sentencing, should have to endure that as the detainees did at the M.D.C [...] I do think that some acknowledgment of these recent events is appropriate here.

Since September 2017 until to day Mr. Zelaya Romero has suffered from chronic and intense pain do to an Inguinal Hernia while he has been at M.C.C. and M.D.C. but he has not received any treatment or surgery for this even know he has raised an issue on multiple occasions to different staff members. See exhibit No. __1__ For the emails to Sick Call and Administrative Remedy Program, that he followed seeking treatment or surgery for his hernia. Mr. Zelaya Romero in 3 years hasn't received any treatment for his hernia and has been denied his right their to proper medical care of a prisioner violated the Fourteenth and eighth amendment and resulted in unconstitutional, cruel and unusual punishment. Thus prison staff who act reasonably in response to an inmate-health risk cannot be found liable under an excessive and unfair punishment clause, and conversely, failing to take reasonable measures in response to medical condition can lead to liability.

Since begin the COVID-19 pandemic in 03, 2020 till present M.D.C. Brooklyn has been placed on lock down Mr Zelaya Romero has endured excessive lock in's cell, receive cruel harmful and inhuman treatment, for long periods at time in his cell without visits legal and social, limit access to law library, recreation, food services, commissary and health care. He has serious problems emotional and

mental health, he was needy treatment Psichological and medication to serious medical needs, the prisoner was actually deprived of adequate medical care on behalf of MDC/BOP

Schedule of months, days and hours lock in/out cell during COVID-19 Pandemic. See also exhibit No. 2

| Months | Days | Hours | Hrs lock in cell | Hrs out cell |
|---|---|---|---|---|
| March April 03/30 - 04/30 | 32 | 768 | 757 hrs 30 min | 10 hrs 30 min |
| May 05/01 - 05/31 | 31 | 744 | 705 hrs | 39 hrs |
| June 06/01 - 06/30 | 30 | 720 | 678 hrs 10 min | 41 hrs 50 min |
| July 07/01 - 07/31 | 31 | 744 | 651 hrs | 93 hrs |
| August 08/01 - 08/31 | 31 | 744 | 714 hrs | 30 hrs |
| September 09/01 - 09/30 | 30 | 720 | 633 hrs | 87 hrs |
| October 10/01 - 10/31 | 31 | 744 | 657 hrs | 87 hrs |
| November 11/01 - 11/30 | 30 | 720 | 636 hrs | 84 hrs |
| December 12/01 - 12/31 | 31 | 744 | 740 hrs 30 min | 3 hrs 30 min |
| Total | 277 | 6648 | 6172 hrs 10 min | 475 hrs 50 min |

8.1

| Months | Days | Hours | Hrs lock in Cell | Hrs out Cell |
|---|---|---|---|---|
| January 01/01 - 01/31 | 31 | 744 | 731 hrs 20 min | 12 hrs 40 min |
| February 02/01 - 02/28 | 28 | 672 | 630 hrs | 42 hrs |
| March 03/01 - 03/31 | | | | |
| April 04/01 - 04/30 | | | | |
| | | | | |
| | | | | |
| Last Time 2020 | 277 | 6648 | 6172 hrs 10 min | 475 hrs 50 min |
| Total | 336 | 8,064 | 7,533 hrs 30 min | 528 hrs 30 min |

In her opinion Liliana Rusansky Drob, Psy. D. Clinical Psychologist in the Confidential Psychological Report, January 29, 2020 in the page No. 19, title Recommendations, paragraph second in the lines 4 to 15 she recommends:

Mr. Zelaya Romero is in need of Psychiatric and Psychotherapeutic treatment for his depressive symptoms, characterized by feelings of hopelessness, worry and fear for his life and that of his family, impaired self-esteem, poor sleep and somatic complaints associated with depressive states. At the present time his greatest expressed concern is the perception that cooperating with the government would lead others to harm him or his family. While not currently suicidal, given his history of depressive episodes and reported history of suicidal ideation, continued Psychiatric Monitoring and Evaluation for and/or adjustment of Psychiatric Medication is indicated. While he may be resistant to viewing himself to be in need of Psychotherapeutic help, he would benefit from anger management, social skills therapy and cognitive therapy designed to challenge his depressive and other maladaptive beliefs about himself and others. Supportive Treatment to help him cope with his current highly stressful situation is also indicated.

See Confidential Psychological Report, January 29, 2020, Psychological Evaluation to Ludwig Criss Zelaya Romero, it was realize by Liliana Rusansky Drob, Psy. D. Clinical Psychologist.

The Prison Staff violate the Civil Rights of Institutionalized Act, (CRIPA) as well as the eighth and fourteenth Amendments to United States Constitution when they deprive an inmate of his basic human needs, such as food, clothing, Medical care and safe, recreation, education and sanitary living conditions.

On in about June of 2020, within the first week, inmate Mr. Hamel Floyd suffered a panick attack of a long period of time lock in his cell, the reason's supposley stated by The Wall Street Journal New's Paper edition Friday June 5, 2020 a Correctional Officer sprayed Mr. Hamel Floyd with pepper spray.

The Bureau of Prison (B.O.P) said: "Officers sprayed Jamel Floyd, a 35 year old, black man, after he barricaded himself in his cell at Brooklyn's Metropolitan Detention Center and broke a cell-door window with a metal object. Members of the jail's medical staff checking on Mr. Floyd later found him unresponsive, the agency said He was pronounced dead at a hospital.

However what it's not stated in the new's paper's is a lot of others inmate's have been affected because of that caused of the abuse in the use irresponsible, excessive and desproporcionate of the pepper spray of the Staff Members de M.D.C. applying directly in the inmates faces. That infact it's so used in this detention center by Staff Members just for the hell of it, for any reason they pepper spray inmate's and there's a lot of inmates in the M.D.C. who suffer health problem's and are lock in there cell which put's inmate's health risk of complication's, there's not a lot of doctor's in the M.D.C. to take of lot's of inmate's medical issue's if inmate's get very sick do to the over use of pepper sprayed. See exhibit No. 3 , Black Life Matters "B.L.M" protest for this death in front West Building M.D.C. Brooklyn's.

Nowadays U.S. Department of Justice specifically the Assistant Attorney General, Civil Rights Division begin an investigation in this issue.

Mr. Zelaya Romero nowadays living in unit J05-73 where there is 86 inmates and 62 of us including I has tested positive for COVID-19, according to the Medical Staff at M.D.C. Brooklyn. Around 72% of the population in J05-73 has been tested positive of COVID-19. Since november 29, 2020 this unit is on lock down for quarantine. I also had asked different Medical Staff workers to please provide me with my COVID-19 test, stating that I was tested positive, and I have been deny, about it. Also its unfair that we are locked in and its impossible that we cant use the phone or computers to get in contact with our love ones to let them know that we are fine. The Staff Administration of M.D.C. gave us commissary list to fill out they also charged us from our account on 11/18/2020 till this day they havent gave us our personal hygiene and food. We only allow 10 minutes out to shower for 3 days which are Monday, Wednesday, and Friday and the other days we are locked in cell, total of hrs locked in is 167.5 a week. So with that being said we only out for 30 minutes per week. Since we was deny commissary we cant send letters out to our family to let them know how we doing, cause we don't have any stamps. This is the treat unconstitutional, cruel and punitive violation of the United States Constitutions. See exhibit N° 4   COVID-19 test result.
As resulted for COVID-19 I suffered the follow symtoms
Days 1 to 3
Muscle pain (in back and chest)

Days 3 to 5
Coughing and sneezing
Temperature and congestion
Suffocation (Asphyxia)
Sore throat
Headaches
Cold sores in mouth and tongue
Eyes pain and hand pain

Days 5 to 10
Bleending nose
Joint pain (Knee and elbow)
Muscle pain (back and chest)
Headaches and eyes pain
Rash (Itch)
No taste buds
No Sense smell
No hunger

Days 10 to 15
Sore throat

There was a particular day I remember at night I had fever, I also felt suffocated that I couldnt breathe. So then I press the emergency button to alert the Correctional Officer "C.O" that something was wrong and the button didnt work at all. Then my bunky call the C.O, also banging on the door to get their attention, so then the C.O. came and my bunky told him please can you get a medical attention, but they never come. So I took it upon my self and I put Bengay on my chest and that helped me a bit, I felt a little better. Why is that when

I lay dow, I feel suffocated as well and like that I went to sleep. Two days later I had Cold Sore in the mouth and tongue that didnt let me eat my food that the prison brings us, and for two days I ate commissary soups with warm water from the sink, because the C.O. wouldnt give us hot water, or let us get water ourselves to drink. The regular meals were delayed by hours and occassion the food comes to us all burnt, also the food wasnt fully done it was medium rare.

## Conclusion

For this reasons written above that Mr. Zelaya Romero has endure in Metropolitan Correctional Center "M.C.C." and Metropolitan Detention Center "M.D.C." Hard Confinement, finding that the conditions in M.C.C. and M.D.C. violate the Civil Rights of Institutionalized Person Act, (CRIPA), as well as the eighth and Fourteenth Amendment's to United States Constitutions, and unconstitutional conditions in general for the United States Attorney to take any position inconsistent would violate the Principle of Judicial Estoppel which prohibits Goverment Attorneys from takin inconsistent position Judicial Proceedings. See United States v. Levasseur (Citation Unavailable) (1st Circuit 1999).

In attempting to eliminate disparity Congress enumerated factors the sentencing Judge should consider in determining the appropriate sentencing range, as stated in 18 U.S.C.S § 3553 (a) (1988). It recognized that there would be circumstances in which departure from the Guidelines' range would be necessary, and granted statutory authority to depart from the Guidelines' range when the Court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately, not adequately taken into consideration by the Sentencing Commision in formulating the guidelines, as stated in 18 U.S.C.S § 3553 (b). Congress has indicated that Courts should apply the Guidelines' and policy statements issued by the Sentencing Commission that are in effect at time of sentencing, not those extant at the time of the commission of the crime.

The Court reviews the District Court's factual determination that such extreme vulnerability was present under the clearly erroneous standard of 18 U.S.C.S § 3742 (e), defering to the District Court's findings because it is in the best position to observe the defendant's demenor and

characteristics.

Pursuant to U.S. Sentencing Guidelines Manual § 5H1.3 and 5H1.4 the factors of Physical, Mental and Emotional condition are not ordinarily relevant in determining whether a sentence should be outside the Guidelines: Extreme vulnerability of criminal defendants is a factor that was not adequately considered by the U.S. Sentencing Commission and is a proper for departure under 18 U.S.C.S § 3553 (b)

The Court is free to consider any and all relevant circumstances to the matter before the Court in determining what sentence would be appropriate. Here, the defendant would respectfully move the Court to consider the Harsh Conditions of Pre-trial incarceration as a basis for the Court to show lenieney in the imposition of a sentence in this matter

Therefore, the defendant respectfully asks this Honorable Court grant a Downward Departure based upon harsh condition of Pre-trial incarceration for time at the Metropolitan Correctional Center (M.C.C.) New York and Metropolitan Detention Center (M.D.C) Brooklyn.

Your Sinecerely.

[signature]
Ludwig Criss Zelaya Romero
Criminal Case Nº S1 1Cr. 174 (LGS)
Register # 75942-054
Metropolitan Detention Center
P.O. Box 329002, Brooklyn, NY 11232